UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. 05-10019-RGS |
| ) | |
| DANIEL W. McELROY, ) | |
| AIMEE J. KING McELROY, and ) | |
| XIEU VAN SON ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF THE DEFENDANTS,
DANIEL W. MCELROY AND AIMEE J. KING MCELROY, TO DISMISS COUNTS
TWO THROUGH FOUR BECAUSE THE ALLEGED MAILINGS WERE NOT IN
<u>FURTHERANCE OF A SCHEME TO DEFRAUD</u>**

Defendants Daniel W. McElroy ("Mr. McElroy") and Aimee J. King McElroy ("Ms. King") submit that the mailings alleged in Counts Two through Four of the Indictment were not made in furtherance of a scheme to defraud as required to support a charge of mail fraud pursuant to 18 U.S.C. §1341 and, therefore, Counts Two through Four must be dismissed. The Indictment alleges that Mr. McElroy and Ms. King committed mail fraud pursuant to 18 U.S.C. §1341 in furtherance of a scheme to reduce premiums for workers compensation insurance paid to private insurance companies. The mailings that are the bases for Counts Two through Four consist of Workers Compensation and Employers Liability Insurance Policy Information Pages ("Information Page") sent by private insurance companies which reflect calculated premiums for workers compensation insurance. The government alleges that these premium calculations were based upon false and fraudulent representations regarding the payroll of temporary employment agency businesses. However, Mr. McElroy and Ms. King submit that the mailing of Information

Pages were not made for the purpose of executing the alleged scheme to defraud private insurance companies nor were they incident to an essential element of the alleged scheme. As a result, the mailing of Information Pages was not sufficient to satisfy the "in furtherance of" requirement to satisfy a federal mail fraud charge. Accordingly, Counts Two through Four must be dismissed.

## BACKGROUND

Counts Two through Four of the Indictment charge Mr. McElroy and Ms. King with causing insurance documents that reflected workers compensation insurance premium calculations based upon false representations to be sent and delivered through the mail as part of a scheme to fraudulently reduce the premiums for workers compensation insurance paid to private insurance companies. See Indictment at 23. The mailings alleged in Counts Two through Four are Information Pages, mailed on three separate occasions from March 3, 2000 to February 13, 2001, by private insurance companies. The Information Pages reflect calculated workers compensation insurance premiums to be paid by Pro Temp Company, Precission Temp Corp., and Daily A. King Labor, Inc. Id. The Information Pages did not reflect how the insurance premiums were calculated and they did not represent invoices or a request for payroll information. The mailing of Information Pages was also not a prerequisite to obtain workers compensation insurance coverage.

## ARGUMENT

The mail fraud statute "does not purport to reach all frauds, but only those limited instances in which the use of the mails is part of the execution of the fraud." Kann v. United States, 323 U.S. 88, 95 (1944). As explained by the Supreme Court, "Congress could have drafted the mail fraud statute so as to require only that the mails be in fact used as a result of the

fraudulent scheme. But it did not do this, instead, it required that the use of the mails be 'for the purpose of executing such scheme or artifice..." United States v. Maze, 414 U.S. 395, 405 (1974).

To demonstrate a violation of the mail fraud statute, 18 U.S.C. §1341, the prosecution must prove "(1) the devising or attempting to devise a scheme or artifice to defraud; (2) the knowing and willing participation in the scheme with the specific intent to defraud; and (3) the use of the mails in furtherance of the scheme." United States v. Pimental, 380 F.3d 575, 584 (1st Cir. 2004). In order for a mailing to be "in furtherance" of a fraudulent scheme, it must be for the purpose of executing the scheme, or part of the execution of the scheme as conceived by the perpetrator at the time. United States v. Maze, 414 U.S. at 399-400; Schmuck v. United States, 489 U.S. 705, 715 (1989). To constitute mail fraud, the mailing must at least be "incident to an essential part of the scheme" or "a step in [the] plot." Pimental, 380 F.3d at 586 (quoting Schmuck, 489 U.S. at 710-11).

Counts Two through Four charge Mr. McElroy and Ms. King with causing insurance documents, specifically Information Pages, that reflected premium calculations based upon false representations to be sent and delivered through the mail as part of a scheme to fraudulently reduce the premiums for workers compensation insurance paid to private insurance companies. See Indictment at 23. The Information Pages do not constitute invoices, requests for additional payroll information, or requests to confirm financial information. They also do not reflect how workers compensation insurance premiums were calculated. Most importantly, the mailing of Information Page was not a prerequisite to receive workers insurance compensation coverage. Nothing about these mailings furthers the alleged fraud. At most, the government could argue that the mailings were a by-product of the alleged scheme to reduce premiums for workers

compensation insurance. The Supreme Court, however, has been very clear that a mailing, as in this case, that was simply "caused by" an alleged scheme is not sufficient to support a federal mail fraud indictment. United States v. Maze, 414 U.S. 395 (1974) (finding that although the evidence would support a finding that the defendant "caused" the mailings of invoices for goods and services he fraudulently obtained, such mailings did not satisfy the statute's requirements that the mailings be "for the purpose of executing the scheme or artifice to defraud").

This case is clearly distinguishable from the facts presented in Schmuck and Pimental, cases in which courts found mailings to be in furtherance of schemes to defraud. In Schmuck, a defendant tampered with car odometers and sold the vehicles to dealers who, upon resale to customers, mailed title registration papers to the state. Id. at 707. The mailing was necessary to obtain new and "clean" certificates of title for the vehicles. Without the certificates of title, the cars would not be marketable and the scheme would not be successful. The Supreme Court held that the mailings satisfied the "in furtherance of" requirement because they were an essential step in completing the final sales, which were in turn necessary to continue the harmonious defendant-dealer relationship and for the defendant to sell more cars in the future. Id. at 711-12.

Pimental was a workers compensation insurance fraud case. The government alleged that the defendant's scheme involved lying to various workers compensation insurance company representatives about the nature and scope of his company's work in order to reduce the premium payments owed for workers compensation insurance. The defendant was charged with two counts of mail fraud based on the mailing of an "Account Data Report" sent by a loss-control inspector to the defendant's insurance company which summarized false information provided by the defendant concerning the type of work his company performed. Pimental, 380 F.3d at 580. The loss-control report was turned over to the defendant's insurance company so

that the company could provide recommendations to the defendant to improve worker safety. Significantly, the Court found that the mailing of the report was a prerequisite for the defendant to continue receiving insurance coverage. Id. at 586.

In finding that the mailing satisfied the "in furtherance of" requirement of the mail fraud statute, the First Circuit in Pimental held that the report mailed by the loss-control inspector "helped Pimental maintain his ongoing fraudulent venture by ensuring that he continued to receive insurance coverage" and that "had [the inspector] never mailed his loss-control report, Hartford Insurance would have terminated its insurance coverage and Pimental's scheme would have, at least temporarily, come to a halt." Id. The court concluded that the loss-control report furthered the defendant's scheme because it was a "necessary step" in the continued relationship between Pimental and his victim, the insurance company. Id.

Here, the mailing of the Information Pages was not a necessary step or even incident to an essential part of the alleged scheme. Id. at 710-11. There is no suggestion in the Indictment that such mailings helped maintain a relationship between the private insurance companies and Mr. McElroy or Ms. King, or that the Information Pages could be used in the future to ensure the scheme's continued success. Moreover, unlike Pimental, where the defendant's insurance coverage would have been cancelled had the loss-control report not been mailed to the insurance company, the mailing of Information Pages was not a prerequisite to receive or continue to receive insurance coverage. In fact, if the insurance companies had not mailed the Information Pages, the alleged fraud would have been unaffected. As in Maze, "there is no indication that the success of [the alleged] scheme depended in any way" on the mailings. 414 U.S. at 402. It was immaterial to the consummation of the alleged scheme how the insurance companies memorialized premiums after they had been calculated. Parr v. United States, 363 U.S. 370, 393

(1960); see also Kann v. United States, 323 U.S. 88 (where defendants fraudulently caused checks to be issued to them, the court found that the mailing of cashed checks to drawee banks did not satisfy the mailing element of mail fraud because it was immaterial how the bank which paid or credited the checks would collect from the drawee banks).

The mailings in this case do not constitute actual invoices for falsely procured workers compensation insurance policies or requests for confirmation of false representations concerning payroll information that would be necessary to execute the alleged scheme. In stark contrast, the mailings alleged in Counts Two through Four are simply Information Pages reflecting the proposed premium amounts that are insufficient as a matter of law to satisfy the "in furtherance of" requirement of a mail fraud charge.

## CONCLUSION

For the reasons set forth above, Mr. McElroy and Ms. King request that the Court dismiss Counts Two through Four of the Indictment.

Respectfully Submitted,

DANIEL W. McELROY
By his Attorneys,

*/s/ Stephen R. Delinsky*

Stephen R. Delinsky (BBO #119120)
Andrew R. McConville (BBO #632804)
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
One International Place, 18th Floor
Boston, Massachusetts 02110
Telephone No.: (617) 342-6800
Facsimile No.  (617) 342-6899

{K0304385.1}                                6

                                      AIMEE J. KING McELROY
                                      By her Attorney:

                                      */s/ Jack I. Zalkind*
                                      _____
                                      Jack I. Zalkind
                                      BBO No. 538840
                                      One International Place, 18th Flr.
                                      Boston, MA 02110
                                      Telephone: (617) 227-3950
June 30, 2005                       Facsimile:  (617) 342-6899