UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                                )    CASE NO. 05-10019-RGS<br>)<br>DANIEL W. McELROY,                       )<br>AIMEE J. KING McELROY, and         )<br>XIEU VAN SON                                  )<br>)<br>_____ ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS,
DANIEL W. MCELROY AND AIMEE J. KING MCELROY, TO SUPPRESS
EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT
DATED JUNE 25, 2001**

Defendants, Daniel W. McElroy ("Mr. McElroy") and Aimee J. King McElroy ("Ms. King") submit that the evidence seized by the government pursuant to a search warrant dated June 25, 2001, and all fruits derived therefrom must be suppressed because there was insufficient probable cause to issue the warrant. Specifically, the affidavit in support of the warrant to search the second floor of 14 E, G Bristol Drive, South Easton, Massachusetts ("14 Bristol Drive") was insufficient to support a probable cause determination because it relied on information that was unconstitutionally stale.[1] For this reason set forth fully in detail below, the evidence seized during the government's search of the office spaces at 14 Bristol Drive on June 26, 2001 and all fruits derived therefrom must be suppressed.

---

[1] A separate ground for suppression of the search warrant concerns the reckless omission of material facts from the affidavit addressed in Memorandum in Support of Motion of Defendants, Daniel W. McElroy and Aimee J. King McElroy, for a Franks Hearing to Determine if there were Reckless Factual Material Omissions in the Affidavit Supporting the Search Warrant Dated June 25, 2001.

{K0303184.1}                                                      1

I.    <u>Factual Background</u>

A forty-eight page, fifty-eight paragraph affidavit prepared by FBI Special Agent Nancy McCormick, the affiant, formed the basis of the search warrant that was executed on June 26, 2001 at 14 Bristol Drive. <u>See</u> Government's Affidavit ("Govt. Aff.") attached hereto as Exhibit 1. Special Agent McCormick's affidavit relied primarily on information provided by an informant, Michael Powers, during four interviews that she conducted with him from April 2000 to March 2001. <u>Id.</u> at ¶20. According to the affidavit, the government's investigation began after Mr. Powers, who was formerly employed as a bookkeeper at Daily A. King Labor, Inc. ("DAKL") from June 1996 to May 1998, reported information to the Insurance Fraud Bureau in the latter part of 1999 concerning an alleged insurance fraud scheme. <u>Id.</u> at ¶ 15. Subsequently, the information provided by Mr. Powers to the government formed the basis for the government's affidavit in support of its application for the search warrant. The factual assertions in the affidavit attributed to Mr. Powers were entirely derived from Mr. Powers' employment at DAKL from June 1996 until he left the company in May 1998 in order to start is own competing temporary employment agency. Mr. Powers, by his own admission, had no contact with Mr. McElroy, Ms. King or Charles Wallace after he left DAKL in May of 1998. <u>See</u> Michael Powers' 302 dated March 12, 2001 at page 5, attached hereto as Exhibit 2.

From June 1996 through May 1998, the time period that Mr. Powers claimed to have observed the alleged insurance fraud and tax fraud schemes, DAKL's office spaces were located at 24 Norfolk Avenue, South Easton, Massachusetts. According to the

affidavit, DAKL moved its offices to 14 Bristol Drive in late 2000. Govt. Aff. at ¶¶ 33, 35-36. The affidavit does not indicate that Mr. Powers was ever physically present at the 14 Bristol Drive office spaces or that he was aware of any records that were located at this new location or that he was familiar with the specific business activities that were conducted at that site.

On June 25, 2001, the government applied for a warrant to search the second floor of 14 Bristol Drive. This application was made over three years after Mr. Powers' last contact with DAKL, Mr. McElroy, and Ms. King and two years after Mr. Powers first provided information to the government regarding the alleged insurance fraud and tax fraud schemes. Despite this substantial lapse in time, a search warrant was issued by Robert Collings, Chief U.S. Magistrate Judge, and executed on June 26, 2001. The search resulted in the seizure of thousands of documents, including personnel files, receipts, timesheets, invoices, tax documents and other business records, as well as computers disks and computer equipment.

On January 26, 2005, the Grand Jury of the United States District Court, District of Massachusetts, returned indictments against Mr. McElroy and Ms. King, charging them with one count of conspiracy (18 U.S.C. §371), three counts of mail fraud (18 U.S.C. §1341), and fourteen counts of procuring false tax returns (26 U.S.C. §7206).

II.  <u>Argument</u>

The Supreme Court has established that for probable cause information to support the issuance of a search warrant, "the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." <u>Sgro v.</u>

United States, 287 U.S. 206, 210 (1932). Therefore, a search warrant cannot be constitutionally issued or executed if it is supported only by untimely or stale probable cause information. See United States v. Shomo, 786 F.2d 981, 983 (10th Cir. 1986). (probable cause to execute a search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched). In this case, Mr. McElroy and Ms. King submit that because the affidavit was based on stale information, the magistrate did not have probable cause to the issue the warrant to search 14 Bristol Drive.

The government's affidavit relied primarily on information provided by Mr. Powers which was entirely derived from his employment at DAKL between June 1996 and May 1998. The government's repeated interviews of Mr. Powers leading up to the search do not remedy the unavoidable staleness issue, as the information he presented remained rooted in the 1996 to 1998 time frame. In fact, Mr. Powers acknowledges in his statement to Special Agent McCormick on March 12, 2001 that he had no contact with Mr. McElroy, Ms. King or Charles Wallace after he stopped working for DAKL in May of 1998. Therefore, the basis for his knowledge ended over three years before the search warrant was issued and executed.

In addition, during the time period that Mr. Powers alleged to have observed the activities relating to the alleged insurance and tax fraud schemes, the DAKL office spaces were located at 24 Norfolk Avenue, South Easton, Massachusetts. DAKL relocated to 14 Bristol Drive in late 2000, several months before the search warrant was issued. Consequently, Mr. Powers had no knowledge of what, if any, material was located at the new office spaces, or what business was conducted at the site, as he had never been

physically present within that location and his knowledge of the activities conducted by DAKL ended when he left in 1998 to start his own competing temporary employment agency. The fact that Mr. Powers observed alleged criminal activity from 1996 to 1998 does not provide a substantial basis for believing that evidence of criminal activity would be found at a completely different location three years later. The excessive lapse between Mr. Powers' observations which ended with his departure from DAKL in May of 1998 and Special Agent McCormick's application for the warrant on June 25, 2001 renders the information stale, unreliable, and wholly insufficient to support a finding that the items sought by the government would be found at 14 Bristol Drive at the time that the search warrant was issued.

Courts confronting a suppression motion based on staleness of probable cause information not only factor the age of the information presented but also consider whether the conduct alleged in the affidavit involved continuing activity. United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990). The defendants recognize that the passage of time becomes less significant in a staleness analysis when the affidavit properly recites facts indicating activity of a continuous nature. United States v. Spikes, 158 F.3d 913, 924 (6th Cir. 1998). However, courts have also held that when a significant period of time has elapsed, "mere furtive movements" or other generally suspicious conduct will not suffice to show the requisite continuation of activity to overcome staleness. See Commonwealth v. Jackson, 461 Pa. 632 (1975). In Jackson, the court held that evidence that demonstrated that the defendant was a large-scale narcotics dealer combined with suspicious conduct occurring a year later did not provide sufficient probable cause that narcotics would be found in the defendant's car. In support of its

decision, the court explained that "evidence to demonstrate continued criminal activity must establish actual continuity of the illegal enterprise" and that "mere suspicion [wa]s not an adequate ground for the issuance of a search warrant." Id. at 585.

In a veiled attempt to demonstrate continuous criminal activity in order to overcome the staleness of Mr. Powers' information, Special Agent McCormick relied on observations from the government's surveillance of 14 Bristol Drive conducted in April 2001, over two months before the search was executed. Govt. Aff. at ¶ 31. According to Special Agent McCormick, the surveillance revealed "activity and vehicles consistent with an active business", observations of Charles Wallace carrying a black briefcase to and from the office building, individuals including Dich Trieu carrying envelopes, briefcases and satchels, and evidence of a cash withdrawal made from Eastern Bank on April 6, 2001. Govt. Aff. at ¶¶ 41 – 44. Such non-incriminating activity certainly does not demonstrate actual continuity of a criminal enterprise. Furthermore, any conclusions based upon these observations, viewed independently of the stale information provided by Mr. Powers, represent, at most, a mere suspicion on the part of the government, which, as mentioned previously, is insufficient to constitute probable cause. United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000). The affidavit's inclusion of its surveillance of the office building simply does not present sufficient evidence from which a judicial officer reasonably could have inferred continuous criminal activity and that evidence of a crime would be located at 14 Bristol Drive at the time the warrant was issued.

In addition to Mr. Powers' stale information and the results of the government's inconclusive surveillance of the activities at 14 Bristol Drive, the affidavit includes

information relayed to Special Agent McCormick from various government agencies in a further attempt to demonstrate continuous illegal activity. Specifically, the affidavit incorporates information provided to Special McCormick from the Insurance Fraud Bureau regarding workers compensation insurance for DAKL and Pro Temp, and double-hearsay statements based on information provided by IRS Agent Linda Bova to IRS Agent Demeo that were eventually relayed to Special Agent McCormick regarding Pro Temp's tax records. Govt. Aff. ¶¶ 20 – 22, 24 – 29. However, the information provided to Special Agent McCormick from these government agents relates to activity that occurred from 1994 to 1998. Consequently, its inclusion in the affidavit fails to establish criminal activity of a continuous nature necessary to overcome staleness.

In addition, Special Agent McCormick provided no indication in the affidavit when this additional information was revealed to her or how close in time it was discovered in relation to the application for the search warrant. As such, this undated information, which was intended to supplement Mr. Powers' stale information, suffers from the same staleness defect. As the First Circuit has held, "officers with information of questionable recency [may] escape embarrassment by simply omitting averments as to time…To create the possibility of ancient information parading beneath the protective mask of a bland, 'present tense' warrant would not, in our opinion, be in the interests of proper law enforcement justice." Rosencranz v. United States, 356 F.2d 310, 316 - 317 (1st Cir. 1966).

IV.   Conclusion

For the foregoing reasons, Mr. McElroy and Ms. King request this Court to

suppress the evidence seized pursuant to the search warrant issued on June 25, 2001 and all fruits derived therefrom.

        Respectfully Submitted,

        DANIEL W. McELROY
        By his Attorneys,

        _____
        Stephen R. Delinsky  (BBO #119120)
        Andrew R. McConville (BBO #632804)
        ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
        One International Place, 18th Floor
        Boston, Massachusetts 02110
        Telephone No.:  (617) 342-6800
        Facsimile No.   (617) 342-6899


        AIMEE J. KING McELROY
        By her Attorney:

        _____
        Jack I. Zalkind
        BBO No. 538840
        One International Place, 18th Flr.
        Boston, MA 02110
        Telephone: (617) 227-3950
        Facsimile: (617) 342-6899

June 30, 2005