UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Crim. No. 05-10019-RGS<br>DANIEL W. McELROY, )<br>AIMEE J. KING McELROY, and )<br>XIEU VAN SON, )<br>)<br>defendants. )<br>) | |

UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION
FOR FRANKS HEARING

The United States, by its undersigned counsel, opposes the Motion of Defendants, Daniel W. McElroy and Aimee J. King McElroy, for a Franks Hearing to Determine if There Were Intentional and or Reckless Factual Material Omissions in the Affidavit Supporting the Search Warrant Dated June 25, 2001, June 30, 2005 (hereinafter "Mot. for Franks Hearing"). As set forth below, the defendants fail to make any "substantial preliminary showing" that there was any false statement or material omission in the search warrant affidavit at issue, or that any such false statement or material omission was made knowingly, intentionally or with reckless disregard of the truth, let alone that any such falsity or omission was "necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978). See also United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993) ("A comparable showing is required if the defendant would establish that technically accurate statements by an affiant have been rendered misleading by material omissions.") (citation omitted).

The Affidavit of Special Agent Nancy McCormick, submitted in connection with the application for the search warrant in this case, contains a detailed recital of the substantial evidence showing probable cause to believe that evidence, fruits and instrumentalities of the offenses of tax fraud and mail fraud would be found in the offices of Daily A. King company. See Mot. for Franks Hearing: Exh. 1 Application and Affidavit for Search Warrant (hereinafter "McCormick Affidavit").  Among the sources of information cited in the McCormick Affidavit were Michael Powers, who was a former employee of the defendants' temporary employment agency business, as well as insurance auditors, an IRS auditor, officialsof the United States Department of Labor, documentary materials such as currency transaction reports and tax returns, and surveillance findings.  See McCormick Affidavit, passim.

Defendants do not contend that there are any falsehoods in the affidavit.  Rather, they contend that the 40-page Affidavit is insufficiently fulsome in its recounting of the information gathered in the course of the investigation.  Specifically, defendants contend that the Affidavit is deficient because it omits certain "information" about a named informant, Michael Powers.

The First Circuit has enunciated a two-prong test that must be satisfied before an omission of information may trigger a Franks hearing. See United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002).  A defendant seeking a Franks hearing must make "a substantial preliminary showing" both as to wrongful intent on the part of the government agent providing seeking the warrant and as to the materiality of the omitted information.  Defendants must show: (First) that the putative omissions they identify were "made knowingly and intentionally" or "with reckless disregard for the truth"; and (Second) that the omissions were "necessary to the finding of probable cause."  Castillo, 287 F.3d at 25; see United States v. Owens, 167 F.3d 739, 745 (1st Cir. 1999) (denying defendant's claim where officer's acts amounted to no more than negligence,

since "[a]llegations of negligence or innocent mistake are insufficient." (citing Franks, 438 U.S. at 171)). Regarding the materiality inquiry, moreover, when omissions are at issue, "the inquiry is whether . . . inclusion [of the omitted facts] in an affidavit would have led to a *negative* finding by the magistrate on probable cause." Castillo 287 F.3d at 25 n.4.

Defendants cannot show intentional concealment with respect to any of these claimed lacunae. Nor, as discussed below, do the putative "omissions" (separately or cumulatively) meet the standard for materiality; even if all the "missing" information were added to the Affidavit, the showing of probable cause remains unassailable.

      i.      Intentional Concealment

Reviewing each of defendants' claimed "omissions" in turn, it is evident that defendants cannot demonstrate intentional concealment with respect to any of them:

(a)    Powers approached the government and provided incriminating information concerning Mr. McElroy and Ms. King in 1999 only after his [Powers's] temporary employment agency came under investigation by the Commonwealth of Massachusetts. Mot. for Franks Hearing at 2-3, 7.

Defendants fail to offer a scintilla of evidence that this information was intentionally omitted from the McCormick Affidavit. Indeed, the evidence they offer suggests precisely the opposite. Defendants point to a report of an interview of Powers's business partner, John Mahan, in which Mahan mentioned that the Massachusetts Department of Employment and Training had, in 1999, begun an investigation of Powers's and Mahan's business. Mot. for Franks Hearing at 3. That interview took place in March 2002, approximately nine months *after* the search. By no stretch of the imagination can an officer be accused of intentionally omitting information that was not yet known to the officer.

  (b) Powers received "letter immunity" from the United States Attorney, i.e. a written promise that his statements would not be used against him, directly or indirectly. Mot. for <u>Franks</u> Hearing at 3, 7.

In making much of the fact that Powers received a letter immunity agreement from the U.S. Attorney, defendants ignore the critical fact that Powers had already provided his information to investigators from the Insurance Fraud Bureau, <u>before</u> he received any use immunity promise. <u>See</u> McCormick Affidavit ¶¶15-17. That Powers subsequently received a promise of use immunity – which would not, in any event, protect Powers from prosecution based upon the information he had already provided to the Insurance Fraud Bureau – is incidental at best.

  Even an informant's prior criminal record need not ordinarily be recited in a search warrant. <u>United States v. Rumney</u>, 867 F.2d 714, 720-21 (1st Cir. 1989) ("A criminal record, no matter how lengthy, does not necessarily impugn one's veracity."). In this case, Powers received a promise of use immunity, a promise that was explicitly made contingent upon his providing <u>truthful</u> information. Mot. for <u>Franks</u> Hearing, Exh. 3 (Powers's Immunity Letter) at 2 ¶4. Nothing about, or contained in, that agreement impugned Powers's veracity. While it is common, in the course of a <u>trial</u>, to subject witnesses to cross-examination regarding "promises, rewards and inducements" they may have received, the probable cause determination for issuing a search warrant is <u>not</u> the occasion for airing such matters. <u>See</u> <u>United States v. Greenburg</u>, 410 F.3d 63, 69 (1st Cir. 2005) ("The task in assessing the informant's credibility is not to determine definitively whether the informant is lying or in error. . . . Rather, a probable cause finding may be based on an informant's tip so long as the probability of a lying or inaccurate informer has been sufficiently reduced.") (citations omitted).

     (c)     A clause in Powers immunity letter suggests that Powers may have been charged with some unspecified crime. Mot. for <u>Franks</u> Hearing at 3, 7. From this, defendants infer that "Mr. Powers was facing either state or federal criminal charges during the period he was being interviewed by the government. . . ." <u>Id.</u> at 7.

This is a red-herring. Powers' immunity letter includes a boiler-plate provision regarding his attorney's consent to allow Powers to meet with government agents without the attorney's presence. Mot. for <u>Franks</u> Hearing, Exh.3 (Powers's Immunity Letter) ¶2. In a scrivener's error – which was the fault of undersigned counsel – the provision in question describes Powers's right to have counsel present when "communicating with representatives of the government concerning the criminal conduct with which he has been charged." That clause should have simply noted Powers's potential right to have counsel present when "communicating with representatives of the government."

The simple fact is that Powers was <u>not</u> "facing either state or federal criminal charges during the period he was being interviewed by the government." Mot. for <u>Franks</u> Hearing at 7. There was no omission whatsoever, let alone an intentional omission of material fact.

     (d)     Powers made a comment about the method of premium calculation with respect to one of the defendants' workers compensation insurance carriers, Reliance National Insurance, suggesting that Powers did not believe falsifying defendants' payroll would affect that carrier's calculation of insurance premiums.[1] <u>Id.</u> at 4, 8.

As noted in the McCormick Affidavit, Reliance National Indemnity Co. ("Reliance") was one of seven insurance carriers used by one or more of the business entities through which defendants conducted their temporary employment agency business. McCormick Affidavit at 19,

---

[1] Contrary to defendants' assertion, Mr. Powers's statement that he did not "lose sleep" about defrauding Reliance Insurance, does not mean that Powers believed "he, along with Mr. McElroy and Mr. Wallace, were not committing a crime." Mot. for <u>Franks</u> Hearing at 8. At most it suggests that, as to this particular victim, Powers (mistakenly, it so happens) believed the net losses from the crime would be small.

¶20.[2]  Powers stated in one interview that he "did not lose sleep" about falsifying payroll figures that were provided to Reliance because he was under the impression that the payroll figures did not affect the premium calculation for that particular insurer.  Mot. for <u>Franks</u> Hearing, Exh. 4 at 4.  Taking this comment out of context, defendants suggest that this information was exculpatory and should have been included in the affidavit.  But a review of the actual interview report reflects that the comment was part of a detailed description of the extraordinary efforts undertaken by Powers, Wallace and McElroy to falsify and "selectively cull[] payroll records" and to provide fabricated and/or incomplete [IRS Employer's Quarterly Tax Return form] 941's to the auditor for Reliance.  Mot. for <u>Franks</u> Hearing, Exh. 4 at 4.  Whatever Powers may have believed about Reliance's method of calculating premiums, he was plainly describing the operation of a fraud, precisely as outlined in the Affidavit.

In short, only by taking the "lose sleep" comment out of context can defendants' claim that there was any omission at all.  It makes no sense to suggest that the agent intentionally omitted the "lose sleep" comment, when a fair description of the pertinent paragraph of the interview report would have been strongly incriminating.

(e)    That Powers told investigators that McElroy had once made a vague threat discouraging Powers from competing against McElroy.  <u>Id.</u> at 4, 8-9.

Defendants' final claim of wrongful omission is rather convoluted.  They suggest that the Agent should have included a description of a somewhat cryptic threat that Powers said he heard from McElroy, to the effect that  "If you talk to my people, I'm going to come and talk to you."  Mot. for <u>Franks</u> Hearing at 4.  On its face, of course, this would tend to <u>incriminate</u> McElroy.  But defendants claim that since the threat did not come to pass, it somehow becomes

---

[2]    There is a typographical error in the Affidavit, which numbers two paragraphs as "20."  One (with multiple sub-paragraphs) begins on page 9, the other begins on page 19.

exculpatory. Id. Defendants suggest that because Powers described a threat and because that threat did not culminate in any action, Powers must have been lying when he said the threat was made and, "therefore" Powers has demonstrated an animus against McElroy coupled with a willingness to fabricate falsely incriminating information.[3] Id. at 8. Whatever may be an Affiant's obligation to disclose exculpatory information in a search warrant application, it cannot be said to extend to matters that can only be deemed exculpatory by this kind of Tinker-to-Evers-to-Chance chain of inference. When information can only be deemed "exculpatory" by such attenuated logic, it makes no sense to contend that the "omission" of such information somehow reflected reckless or intentional concealment on the part of the government. Cf. United States v. Agurs, 427 U.S. 97, 106-107 (1976) ("If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor.").

      ii.    <u>Materiality</u>

The standard for materiality here is high indeed: Would the inclusion of the "omitted" information have negated the Affidavit's showing of probable cause?

The answer is obvious. Assuming the "omitted" facts were conceivably relevant in weighing Powers's credibility, and assuming that the "omitted" facts weighed <u>against</u> and not in favor of Powers's credibility, it is still impossible to imagine that these facts could have influenced the ultimate credibility of Powers's information. Indeed, given the extensiveness and

---

[3] Not only is defendants chain of inference attenuated, it is also internally flawed. Defendants assume that the "condition" of the threat was "met" by Powers's "starting his own competing temporary employment agency." Mot. for Franks Hearing at 4. But, by its terms, the "condition" of the threat was "if you talk to my people." Id. To the extent that the threat is intelligible, it would appear to require not only that Powers start his own agency but that he "talk" to McElroy's "people" (presumably customers, employees or workers). There is no suggestion that Powers did so.

detail of Powers's first-hand information, given the fact that Powers's statements were strongly self-incriminating, and given the extensive corroboration of Powers's information as to the key criminal acts, and given the extensive separate sources of information about defendants' criminal activity, even a significant swipe at Powers's credibility would not undermine the probable cause finding in this case.

      Together and separately, the gist of defendants' claimed omissions is that they somehow impugned Powers's credibility.  But this is hardly the stuff of a <u>Franks</u> hearing.  As detailed above, none of the supposed omissions casts significant doubt on Powers' veracity, let alone on the probable cause finding as a whole.  Indeed, while the "omissions" identified by defendants – such as the existence of a letter immunity agreement which was expressly conditioned upon Powers telling the <u>truth</u> – cannot be said to undermine Powers' credibility, the McCormick Affidavit <u>did</u> recite an important fact that might support an inference that Powers harbored some animus or motive to harm the defendants.  Specifically, Powers is identified in the affidavit as "currently a competitor of the McElroys' temporary employment agency business."  McCormick Affidavit at 9, ¶20a.  To the extent that any of the "omitted" information cited by the defendants can be said to impeach Powers's credibility, it is far less compelling than the fact that was disclosed (<u>i.e.</u>, Powers's presumptive motive to harm his competitors' business).

      In considering whether any omitted fact was material, it is essential to consider Powers's information in the context of the broad range of sources upon which probable cause may rest.  Defendants cite <u>United States v. Vigeant</u>, 176 F.3d 565, 573 (1st Cir. 1999), for the proposition that information regarding an informant's criminal history, recent plea agreement and other indicia of reliability, can be material. Mot. for <u>Franks</u> Hearing at 7.  But defendants ignore that <u>Vigeant</u> involved a tip by an anonymous confidential informant whose allegations of criminal

8

conduct lacked "self-authenticating details'" and were not only uncorroborated, but substantially contradicted by evidence known to the agents. See 176 F.3d at 570, 573. In this case, by contrast, an individual, identified by name, provided a detailed first-hand description of the criminal activity in question and of his role in it. As the First Circuit has recently noted, "[a] specific, first-hand account of possible criminal activity is a hallmark of a credible tip." Greenburg, 410 F.3d at 67. Moreover, "[w]hen a self-incriminating statement is provided by an informant whose identity is known to the authorities, the statement is more likely to be true because of the risk inherent in making such a statement. Id. at 67-68.

As detailed in the Affidavit, there was substantial independent evidence which not only corroborated, but independently established, the key allegations of criminal activity. See, e.g., McCormick Affidavit ¶23 (detailed chart reflecting multi-million dollar discrepancies between the putative IRS tax returns that were provided to insurance auditors and actual tax returns filed with IRS), ¶24-29 (summary of IRS audit reflecting evasion of employment taxes on approximately $5,599,876.28 in compensation paid to employees during the year 1997 alone). This kind of "corroboration" was more than sufficient to support Powers's credibility. Cf. Greenburg, 410 F.3d at 69 (noting that "corroboration of even innocent activity reported in the tip may support a finding of probable cause") (citation omitted).

Powers's information regarding the defendants' business is laid-out in the affidavit, along with a variety of corroborating information. See, e.g., McCormick Affidavit at 9 ¶20b (Secretary of State Records); at 10 ¶20d (IRS tax records); at 11 ¶20f (IRS tax records); at 11-12 ¶20g (Secretary of State Records); at 14 ¶20m (IRS tax records); at 15 ¶20o (IRS records and records of insurance carriers); at 17 ¶20s (Liberty Mutual records). Additional information, equally incriminating, comes from other sources, as set forth in pages 19-26 of the Affidavit. This is not

a case in which the evidence of criminal conduct comes from a single informant with additional information that merely corroborates that informant's proffer.

    As the First Circuit has noted:

> Among the factors that may contribute to a probable cause determination are: whether an affidavit supports the probable veracity or basis of knowledge of persons supplying hearsay information; whether informant statements are self-authenticating; whether some or all [of] the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); and whether a law-enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise. . . . None of these factors are individually indispensable; rather, "stronger evidence on one or more factors may compensate for a weaker or deficient showing on another." . . .

United States v. Strother, 318 F.3d 64, 67-68 (1st Cir. 2003) (citations omitted).

    Defendants have pointed to "omissions" of vanishingly scant significance. Such quibbles do nothing to undermine a probable cause finding. Indeed, even outright inconsistencies may properly be disregarded as immaterial to the determination of probable cause. See, e.g., United States v. Schaefer, 87 F.3d 562, 567 (1st Cir. 1996) ("When an informant's statement and the events he attempts to describe diverge in minor ways, the magistrate may reasonably choose to credit the [informant's] statements and disregard petty inconsistencies."). Taking into account the broad and detailed information set forth in the McCormick Affidavit, by no stretch of the imagination can it be said that the finding of probable cause would have been negated if the material in question had been added to that affidavit.

Defendants have failed to make any substantial showing that there were omissions of any significance, let alone that such omissions were intentional or reckless, let alone that such omissions were material. Accordingly, defendants' motion for a <u>Franks</u> hearing should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: July 22, 2005

By: <u>/s/ Paul G. Levenson</u>
PAUL G. LEVENSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147