UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 05-10019-RGS |
| ) | |
| DANIEL W. McELROY, ) | |
| AIMEE J. KING McELROY, and ) | |
| XIEU VAN SON, ) | |
| ) | |
| defendants. ) | |

UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO SUPRESS

The United States, by its undersigned counsel, opposes the Motion of Defendants, Daniel W. McElroy and Aimee J. King McElroy, to Suppress Evidence Seized Pursuant to a Search Warrant Dated June 25, 2001, June 30, 2005 (hereinafter "Mot. to Supress"). As set forth below, defendants' claim that the information supporting probable cause was "stale" is simply misplaced. On its face, the Affidavit reflects ample recent information to support probable cause for the warrant.

The Affidavit of Special Agent Nancy McCormick, submitted in connection with the application for the search warrant in this case, contains a detailed recital of the substantial evidence showing probable cause to believe that evidence, fruits and instrumentalities of the offenses of tax fraud and mail fraud would be found in the offices of Daily A. King company. The Application and Affidavit for Search Warrant (hereinafter the "McCormick Affidavit"), is attached as Exhibit 1 to Defendants' Motion for a <u>Franks</u> hearing.

Defendants correctly note that one source of information supporting the probable cause determination was Michael Powers, who worked with the defendants between 1996 and 1998,

1

approximately 2½ years before the search.  But, in arguing that the information in the affidavit was stale, defendants ignore that there was ample additional information, from multiple other sources, "freshening" the probable cause in this case.  While Michael Powers supplied information regarding his first-hand knowledge of the defendants' criminal activities through 1998, the affidavit reflects specific and detailed information establishing that the fraud scheme continued, unabated, through April 2001.  Compare United States v. Greenburg, 410 F.3d 63, 69 (1st Cir. 2005) (reversing suppression order where district court failed to accord adequate weight to corroboration of informant information through observation of ongoing business activities).

In particular, the affidavit reflects that, on October 4, 1999, fabricated [IRS Employer's Quarterly Tax Return form] 941's were provided to an insurance auditor examining the payroll of Daily A. King Labor, Inc.  McCormick Affidavit ¶23.  The affidavit also outlines evidence showing that defendants' scheme of paying cash under-the-table to evade taxes and insurance premiums continued into 2001.  Direct surveillance on April 6, 2001, coupled with a Currency Transaction Report ("CTR") of the same date, reflected that Wallace and Xieu Van Son continued to gather the large quantities of cash for the weekly under-the-table payroll, following precisely the same pattern and practice as Powers had described in the earlier period at the business's previous location.  McCormick Affidavit ¶42.  A review of CTR's, moreover, reflected withdrawals of $3,030,900 in cash for the first half of 2001 alone. McCormick Affidavit ¶30.

Defendants assert that these recent observations were merely of "non-incriminating activity."  Mot. to Suppress at 6.  In so doing, they ignore the First Circuit's recent admonition that "[c]orroboration of apparently innocent activity can establish the reliability of the informant because the activity might come to appear suspicious in light of the initial tip."  Greenburg 410

F.3d at 69. Moreover, they overlook that this was a business that had been expressly <u>enjoined</u> from paying its workers in cash and that had been ordered to make, keep and preserve records of employees and of their wages and hours. McCormick Affidavit ¶31. The information in the affidavit showed that the defendants were continuing to obtain millions of dollars in cash each year. McCormick Affidavit ¶30. Given that there was no evident legitimate purpose for obtaining such cash in the face of an injunction barring cash payments to workers and given the evident inconvenience (not to mention danger) associated with gathering such quantities of cash, there was every reason to believe that the criminal activity was continuing at defendants' new offices.

Defendants also ignore the fact that they had been required, by federal court injunction, to keep and maintain records of their payments to employees, gave ample reason to believe that records of the kind described in the search warrant would be found in defendants' business offices. <u>Compare</u> <u>United States v. Glass Menagerie, Inc.</u>, 721 F. Supp. 54, 58-59 (S.D.N.Y. 1989) (2½ -year-old information from an employee supported a probable cause finding because the search in question was of an ongoing manufacturing business and written records pertaining to inventory and past activity were likely to exist); <u>United States v. Main Street Distrib., Inc.</u>, 700 F. Supp. 655, 662 (E.D.N.Y. 1988) (9 month-old information was not stale because the search involved "an established business enterprise, not some temporary and easily-abandoned location" and the magistrate could conclude that the business had a stocked inventory).

The First Circuit has noted that "a 'primary consideration in evaluating the staleness issue is whether the affidavit describes a single transaction or a continuing pattern of criminal conduct.'" <u>United States v. Nocella</u>, 849 F.2d 33, 40 (1st Cir. 1988) (quoting <u>United States v. Tucker</u>, 638 F.2d 1292, 1299 (5th Cir. 1981). Staleness is not measured merely on the basis of

3

the maturity of the information but in relation to (1) the nature of the suspected criminal activity (discrete crime or regenerating conspiracy), (2) the habits of the suspected criminal (nomadic or entrenched), (3) the character of the items to be seized (perishable or of enduring utility), and (4) the nature and function of the premises to be searched (mere criminal forum or secure operational base). United States v. Bucuvalas, 970 F.2d 937, 940 (1st Cir. 1992) (citations and quotation marks omitted), abrogated on other grounds, Cleveland v. United States, 531 U.S. 12 , 18 (2000). "Where the information points to illegal activity of a continuous nature, the passage of several months between the observations in the affidavit and issuance of the warrant will not render the information stale." United States v. Hershenow, 680 F.2d 847, 853 (1st Cir. 1982) (eleven months). See also Andresen v. Maryland, 427 U.S. 463, 478 n.9 (1976) (noting reasonableness of expectation that business records would be maintained in office for a period of time).

    Here, the criminal activity in question – tax fraud and insurance fraud in connection with the operation of an ongoing business of considerable longevity – was plainly of a continuous nature. See United States v. Schaefer, 87 F.3d 562, 568 (1st Cir. 1996) ("The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a current investigation."). Given that defendants' business was required, by law, to maintain the pertinent records, and given that the key indicium of the ongoing crime (the flow of massive amounts of cash) continued unabated, it was entirely reasonable to believe that evidence, fruits and instrumentalities of the offenses would be found in defendants' offices in June 2001.

    Defendants' staleness claim requires the Court to ignore everything in the McCormick Affidavit except the information provided by Powers. But this is not the appropriate standard.

On the contrary, staleness does not undermine the probable cause determination when the affidavit contains information that updates, substantiates, or corroborates the stale material. As the First Circuit has noted, "When an affidavit tendered in support of a warrant application contains information that is remote in time, a magistrate may still hold it to be adequate if it also contains sufficient recent facts corroborating the older data and linking that data to the present." Schaefer, 87 F.3d at 568. See also United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993) ("Facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence.").

    Finally, it must be noted that, even if defendants were justified in their efforts to second-guess the Magistrate-Judge's probable cause determination, there was nothing in the affidavit or the warrant that would have suggested to any reasonable law enforcement officer that the warrant was in any respect improper or invalid. Because the executing officers reasonably relied in good faith on a facially valid warrant, the evidence they seized is not subject to suppression. See United States v. Leon, 468 U.S. 897, 922 (1984) (holding that evidence seized in reasonable good-faith reliance on a search warrant, which is later found defective, may be admitted).

    Defendants fail even to suggest a basis for arguing that this case fall within any of the recognized exclusions to the Leon good-faith doctrine. See United States v. Owens, 167 F.3d 739, 745 (1st Cir. 1999) (enumerating Leon exclusions). Accordingly, the Court may properly deny defendants' motion without even assessing the constitutionality of the warrant. Owens, 167 F.3d at 745 (citing Leon, 468 U.S. at 925).

Because the Affidavit spelled out information that amply supported the finding of probable cause, both as to the occurrence of the alleged criminal activity and as to the likelihood that evidence, fruits and instrumentalities would be found at the specified location, there was no defect in the warrant.  Moreover, the executing officers relied in good faith on a facially valid warrant.  The defendants' motion to suppress should be denied.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

dated: July 22, 2005

            By: /s/ Paul G. Levenson
                PAUL G. LEVENSON
                Assistant U.S. Attorney
                John Joseph Moakley United States Courthouse
                1 Courthouse Way, Suite 9200
                Boston, MA 02210
                (617) 748-3147