UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 05-10019-RGS

UNITED STATES OF AMERICA

v.

DANIEL W. McELROY and AIMEE J. KING McELROY

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO SUPPRESS
AND MOTION FOR A FRANKS HEARING

February 5, 2007

STEARNS, D.J.

Defendants Daniel McElroy and Aimee King McElroy seek to suppress business records seized pursuant to a warrant from the second floor of 14 E, G Bristol Drive, in South Easton, Massachusetts. The warrant was issued by Magistrate Judge Robert Collings on June 25, 2001, and executed on June 26, 2001. Defendants offer two grounds in support of the motion to suppress the fruits of the warrant: (1) that the information set out in the supporting affidavit was "unconstitutionally stale"; and (2) that material facts were recklessly omitted from the affidavit by the affiant, Federal Bureau of Investigation (FBI) Special Agent Nancy McCormick. With respect to the second ground, defendants seek to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), in order to challenge the veracity of the affidavit.

1. Staleness

The bulk of the incriminating information contained in the affidavit is attributed to Michael Powers, a bookkeeper employed by the defendants from June of 1996 to May of

1998, at Daily A. King Labor, Inc. (DAKL), a temporary employment agency.[1]  Powers describes a scheme orchestrated by defendants to evade federal payroll taxes and worker's compensation insurance premiums by paying employees off the books in cash. Powers initially presented his allegations to the Massachusetts Insurance Fraud Bureau, which then informed the FBI.  Powers' last contact with DAKL as a business insider occurred some 2½ years before the FBI obtained the search warrant.

     While officers are not required to seek a warrant the moment they have information sufficient to establish probable cause, the affidavit supporting the warrant must contain information sufficiently fresh to suppose that the articles sought will be on the premises when the warrant is executed.  Sgro v. United States, 287 U.S. 206, 210-211 (1932).  "It is well established that the temporal proximity or remoteness of events observed has a bearing on the validity of a warrant."  United States v. Dauphinee, 538 F.2d 1, 5 (1st Cir. 1976).  Whether or not information is stale depends on the nature of the property to be seized, the nature of the alleged crime, and the nature of the premises to be searched. Andresen v. State, 331 A.2d 78 (Md. Ct. Spec. App. 1975), aff'd, sub nom. Andresen v. Maryland, 427 U.S. 463 (1976). "The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock." Id., 331 A.2d at 106.  Items that might not have a ready market, like stolen chain saws, items that are of significance to a collector, like firearms and pornography, and items that are an integral part of the operation of on ongoing enterprise, like business records, are

---

[1] DAKL was then located on Norfolk Avenue in South Easton.  DAKL moved to Bristol Drive in South Easton in late 2000.

more likely to remain on a premises for a prolonged period of time than are readily disposable items of contraband, like drugs. See United States v. Schaefer, 87 F.3d 562, 568 (1st Cir. 1996); Behrel v. State, 823 A.2d 696, 712 (Md. 2003); State v. Bova, 690 A.2d 1370, 1384 (Conn. 1997); Commonwealth v. Blye, 5 Mass. App. Ct. 817, 818 (1977). Moreover, where an affidavit details protracted and continuing criminal conduct, time is less of the essence. United States v. Moscatiello, 771 F.2d 589, 597 (1st Cir. 1985); United States v. Tucker, 638 F.2d 1292, 1298-1299 (5th Cir. 1981); United States v. Dennis, 625 F.2d 782, 792 (8th Cir. 1980).

  If the information provided by Powers was all that was offered by way of a demonstration of existing probable cause, the case would be at the rim of the remotely permissible, if not beyond. However, two other sources of information related in the affidavit, which are largely ignored by the defendants, must be taken into account. The first consists of three recent and direct surveillances undertaken during the month prior to the issuance of the warrant. The surveillances confirmed that the defendants' business operations continued unabated in the relocated premises. The second, and more compelling fact is the amount of cash withdrawn from various accounts by defendants and their affiliated businesses between 1997 and 2001, some $40 million in total, including $3,030,900 withdrawn during the four months immediately preceding the application for the warrant. See United States v. Greenburg, 410 F.3d 63, 69 (1st Cir. 2005). While a cash withdrawal, as defendants argue, might not in the ordinary course be of incriminating significance, the generation of these enormous sums of cash by defendants who had been

enjoined by the federal district court from paying employees in cash is a matter of compelling suspicion.[2]

### 2. The Franks Hearing

To be entitled to a Franks hearing, a defendant must make a "substantial preliminary showing" that an affidavit contains intentionally false or recklessly untrue statements that are material to a finding of probable cause. Franks, 438 U.S. at 155-156, 170. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id. at 171. A showing of negligence or simple factual error is insufficient to trigger a Franks hearing. United States v. Monaco, 700 F.2d 577, 580 (10th Cir. 1983); United States v. Baldwin, 691 F.2d 718, 720 n.1 (5th Cir. 1982).

A defendant must further show that any deliberately false or reckless statement was material to the determination of probable cause. If such a showing is made the offending statement is excised from the affidavit, which is then reexamined for probable cause.

---

[2]As the government observes, the injunction's additional requirement that defendants make, keep, and preserve all records of employee wages and hours is a forceful additional indication that the records targeted by the warrant would be found on the defendants' premises.

4

Franks, 438 U.S. at 171-172.  See also United States v. Veillette, 778 F.2d 899, 903-904 (1st Cir. 1985); Doescher v. Estelle, 666 F.2d 285, 288 (5th Cir. 1982) (evidentiary hearing properly denied where even if all challenged material was excised, the affidavit still demonstrated probable cause).  The reckless omission of material information from an affidavit may also raise a Franks issue.  See United States v. Rumney, 867 F.2d 714, 720 (1st Cir. 1989).  Cf. United States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997) ("[A]n affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information."). The omission, however, of a fact that does not cast doubt on the existence of probable cause is not a material misrepresentation.  See United States v. Dennis, 625 F.2d at 791. Cf. United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990) (an omission must be made with the intent to mislead); United States v. Moscatiello, 771 F.2d at 603 (the omission of irrelevant facts is no basis for suppression).  A reviewing court should add in to the mix any facts intentionally or recklessly omitted from the affidavit and then determine whether the new information, if it had been included, would have defeated the finding of probable cause.  See United States v. Cole, 807 F.2d 262, 267-268 (1st Cir. 1986); United States v. Boyce, 601 F. Supp. 947, 955 (D. Minn. 1985).

    Defendants do not contend that Agent McCormick made any deliberately false or reckless statements of an affirmative nature.  They contend rather that certain derogatory information about Powers – the principal informant – should have been included in the affidavit as it might have influenced the Magistrate Judge's assessment of Powers' credibility.  Specifically, the defendants contend that Agent McCormick should have related

5

that: (a) Powers was motivated to come forward with incriminating information about the defendants only after he himself came under investigation by state authorities; (b) that Powers was promised use immunity prior to the giving of his statement to federal agents; (c) that Powers was facing unspecified criminal charges at the time he became a government informant; (d) that Powers "had not lost any sleep" as a result of his participation in preparing misleading documents in connection with an insurance audit; and (e) that Daniel McElroy had warned Powers against attempting to recruit any of his employees into a competing business started by Powers.

This catalogue of supposed omissions is pretty thin in substance (and accuracy): (a) the defendants' own evidence (as the government points out) demonstrates that federal authorities did not learn of the state investigation of Powers until nine months after Agent McCormick prepared her affidavit;[3] (b) letter immunity agreements conditioned on truthful information are a routine accouterment of federal investigatory interviews, as the experienced Magistrate Judge would have known and expected;[4] (c) Powers was never charged with a contemporaneous crime – the suggestion that he had been is taken from a obvious scrivener's error in the use immunity letter; (d) that Powers did not have a guilty conscience about his role in assisting the defendants in falsifying insurance records may

---

[3]Inclusion of this fact in the affidavit, rather than undermining Powers' credibility, would have enhanced it. Any falsehood that Powers knowingly related to the FBI would have invited prosecutorial retaliation thereby compounding rather than alleviating his difficulties with state authorities. To the extent that Powers may have been motivated by a currying of prosecutorial favor, he had every incentive to be truthful.

[4]As the government also notes, the letter was somewhat beside the point as Powers had already spoken to state investigators without any promise of immunity .

reflect poorly on Powers' scruples, but it is difficult to see how it is exculpatory of the defendants; and (e) the exculpatory significance of McElroy's "threat," if that is what it was, is not explained by the defendants. In sum, the supposed omissions, taken singly or collectively, did not amount to the substantial preliminary showing of materiality that is required to trigger a <u>Franks</u> hearing.

ORDER

For the foregoing reasons, defendants' motion to suppress is <u>DENIED</u>. The motion for a <u>Franks</u> hearing is also <u>DENIED</u>.

          SO ORDERED.

          /s/ Richard G. Stearns

          _____
          UNITED STATES DISTRICT JUDGE