UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 05-10019-RGS |
| | ) | |
| DANIEL W. McELROY and | ) | |
| AIMEE J. KING McELROY | ) | |

## MOTION OF THE DEFENDANTS, DANIEL W. MCELROY AND AIMEE J. MCELROY FOR A CONTINUANCE AND REQUEST FOR AN EMERGENCY HEARING

The Defendants, Daniel W. McElroy and Aimee J. McElroy, move for a continuance of the trial date from Tuesday, January 22, 2008 to Monday, March 3, 2008. The Defendants assert the following reasons in support of this Motion.

1.      On April 6, 2005, magistrate Judge Collings in his Report of The Initial Status Conference ordered that "the Government shall produce full and complete discovery pursuant to Rule 16(a)(1)(G), Fed. R. Crim. P. to counsel for the Defendant not less than forty-five (45) working days before trial; the defendant shall comply with his reciprocal obligations respecting discovery of experts pursuant to Rule 16(b)(1)(C), Fed. R. Crim.P., not less than twenty (20) working days before trial."

2.      On Friday January 11, 2008, the Defendants received the Government's Expert Disclosure Dated December 18, 2007. The government contends that the disclosure was faxed to the Defendants' counsels' office on December 18, 2007 at 8:17 p.m. and has produced evidence in a fax report to demonstrate that it did. However, the Defendants never received the Disclosure

on December 18, 2007. The Fax Room employees of Eckert Seamans keep a detailed log of every FAX that is sent and/or received. These log records (attached hereto as Exhibit 1) for December 18 and 19 of 2007 reflect the Fax from the United States Attorney's Office was never received. Therefore, both of the undersigned rightly believed until last Friday that the government was not going to offer expert testimony.

3.      The governments expert disclosure (a copy of which is attached as Exhibit 2) reflects that the government is going to call three experts: and IRS tax expert, an insurance expert, and an IRS computer expert. The Defendants' counsel have worked diligently since receiving this disclosure and cannot be ready for trial on January 22, 2008, because they have to hire and consult with their own experts to understand the government's experts testimony and possibly prepare rebuttal expert testimony. Today, with the government's assistance Mr. Zalkind utilizing an in-house computer technician from Eckert Seamans interviewed the IRS computer expert. However, the computer technician provided to Mr. Zalkind, after listening to the interview and reviewing the expert's notes and proffered testimony, has strongly recommended to Mr. Zalkind, that he and Mr. Delinsky must hire a forensic computer expert to deal with this testimony. Likewise, Mr. Delinsky is currently pursuing accounting and insurance experts to help with the other two government experts.

4.      In fact, if the Defendants had received the governments disclosure on December 18, 2007, the government still would have substantially violated the Court Order, because forty-five working days from December 18, 2007 is February 25, 2008. The Defendants request for a continuance to March 3, 2008 is a significantly less time than forty-five working days from January 11, 2008.

{K0361934.1}

2

5.    In addition, the Defendants need this additional time to investigate the exculpatory information also turned over by the government on January 11, 2008.  This evidence consists of two interview reports.  The first report is an interview of Charles Wallace (attached hereto as Exhibit 3) conducted by the FBI on February 2, 2006 and transcribed on February 9, 2006.  The second report is an interview of Roger Murphy and Gary Kendall (attached hereto as Exhibit 4) conducted by the FBI on February 7, 2005 and transcribed on June 30, 2005.  The information in these reports has powerful exculpatory ramifications for the Defendants.  These reports reveal information that the Defendants did not know and thus, require additional time to investigate and develop.  The Defendants are prepared to make an in camera presentation to the Court regarding why these reports will lead to the development of powerful exculpatory evidence.  The government's late disclosure of this critical evidence, that is between two and two and a half years old, has put the Defendants in a very difficult position of not having sufficient time to properly utilize this information.  The implications of this new information should allow the Defendants to prove the motive behind how they were "set-up" by some of the government's cooperating witnesses.

6.    The Defendants' counsel have worked all weekend on there issues and realize they do not have adequate time without the requested continuance to competently represent their clients.

7.    As the Court is aware both counsel have personal issues that limit the time they can work.  The Court has previously, with the governments consent, accommodated these issues for counsel.  If further elaboration is needed counsel, at the hearing, will provided additional evidence.

{K0361934.1}

3

8.    Under all of the circumstances enumerated above, the defendants' Motion is reasonable and justified.  Consequently the Defendants request: 1) that the Motion for a Continuance be granted; 2) that the Court establish a date for the Defendants to make their reciprocal expert disclosure and 3) provide a return date prior to the trial date for compliance with the Defendants' additional subpoenas.

Respectfully submitted:

**AIMEE J. McELROY**
By her attorney,

Jack I. Zalkind (BBO# 538840)
One International Place
Boston, MA 02110
Telephone No. (617) 227.3950

DATED: January 14, 2008

Respectfully submitted

**DANIEL McELROY,**
By his attorney,

Stephen R. Delinsky (BBO# 119120)
**ECKERT SEAMANS, CHERIN & MELLOTT, LLC**
One International Place, 18th Floor
Boston, MA  02110
Telephone No. (617) 342.6800

CERTIFICATE OF SERVICE
I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on Feb 14, 2008
By: _____

# EXHIBIT 1

## Eckert Seamans Incoming Fax Log

| Date | To | From | Pages | Time | Delivered By |
|------|-----|------|-------|------|--------------|
| 12/17 | PETER | S. GUBB | | | |
| | h | K. WEIS | 7 | 450 | JG |
| 12/18 | Zalknd | Gross | 2 | 1040 | XB |
| | Levy | Addonizio | 9 | " | XB |
| | Whilton | Majors | 1 | " | XB |
| | CARR | K. WEIS | 5 | 11— | JG |
| | Hackett | B. SCHROEDER | 9 | 1117 | " |
| | KEN. | W. ROSE | 28 | 1122 | " |
| | Zalknd | Kevin | 7 | 1135 | XB |
| | Lee | Rose | 28 | " | JG |
| | Ivy | A. Addonizio | 2 | 105 | JG |
| | " | " | 6 | 111 | JG |
| | KUNIAN | J Solway | 16 | 205 | " |
| | Jeffrey | DR. PERLMAN | 2 | 307 | " |
| | Peter | B. 71 | 3 | 321 | " |
| | Elin | Quirk | 3 | 400 | XB |
| | Todd | N. BABANIKAS | 6 | 416 | JG |
| | levy | A. Addonizio | 5 | 507 | JG |
| 12/19 | Kunian | Raman | 1 | 905 | " |
| | Breen | B. Allen | 4 | 952 | " |
| | Todd | John | 2 | 1150 | JG |
| | Breen | B. Allen | 19 | " | " |
| | " | " | " | 1205 | " |
| | John T. | Dan | 16 | 1210 | " |
| | Flammia | JRC | 28 | 120 | " |
| | Todd | Jim | 2 | 230 | " |

## Eckert Seamans Incoming Fax Log

| Date | To | From | Pages | Time | Delivered By |
|------|------|------|-------|------|--------------|
| 12/19 | Delahut | S. Kaspana | 5 | 335 | IG |
| | Anthony | Haskell + Kasskr | | " | " |
| | Kwian | Susan | 18 | 3 44 | " |
| 12/20 | CARR | CARLTON | 9 | 730 | DB |
| | Flammia | Assalone | 4 | 940 | DB |
| | CARR | FERREIRA | 2 | 1010 | JB |
| | CHEN | Gelber | 4 | " | DB |
| | Peter | C. Carlton | 2 | 1130 | IG |
| | Todd | Tani | 3 | 1150 | IG |
| | " " | Susan | 9 | 250 | IG |
| | " | Linda | 2 | 321 | IG |
| | Levy | North Point | 3 | 345 | DB |
| 12/21 | Hazel | T. Lyons | 5 | 935 | IG |
| | Mike F | JRC - Joe | 28 | 1140 | IG |
| | Breen | M. Murphy | 1 | 150 | IG |
| | | " | 8 | 2- | JG |
| | Delinsky | Walter | 19 | 158 | JB |
| | Zalkind | " | " | " | DB |
| | CARR | Latimer | 2 | 305 | DB |
| 12/26 | Brown | Condje | 5 | 710 | JG |
| | Whitton | Blat | 2 | " | JB |
| | Dev aran | Tanya | 3 | 956 | IG |
| | Peter | D. Roper | 2 | ~ | " |
| | Anthony | C. Logan | 1 | 1050 | " |
| | Levy | Kiley | 2 | 335 | DB |
| | Haskett | Smart | 4 | " | DB |

# EXHIBIT 2



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

December 18, 2007

By Fax: (617) 342-6899
Stephen R. Delinsky, Esq.
Eckert Seamans Cherin & Mellott, LLC
One International Place, 18ᵗʰ Floor
Boston, MA 02210

By Fax: (617) 342-6899
Jack I. Zalkind, Esq.
Zalkind & Associates
One International Place
Boston, MA 02210

Re:  United States v. Daniel W. McElroy and Aimee J. King McElroy,
Criminal No. 05-10019-RGS.

Dear Counsel:

As promised, I write to provide you with notice of the government's intention to call witnesses in its case-in-chief who may be construed as "experts," and to summarize their anticipated testimony. The resumes of each are attached.

First, the government intends to call IRS Revenue Agent Joseph Guidoboni. Agent Guidaboni will explain the tax obligations of employers, including the payment of payroll taxes and the withholding of employee payroll and income taxes. He will explain the tax forms that employers and individuals are required to file, including Forms 941, 1120, 1040, and 1099, as well as relevant tax terminology.

Agent Guidoboni will describe his analysis of the tax returns and financial records for the period charged in the conspiracy count in the indictment. Specifically, he has examined your clients' business records, as well as those of their clients, banks and workers compensation insurers. Based on this analysis, he will testify as to what, by his calculation, the defendants should have reported on their tax returns. He will compare these figures with what your clients

December 18, 2007
Page 2

actually reported, and he will determine for each tax year the amount your clients failed to pay to the IRS in payroll taxes and withheld income taxes.

Second, the government will call Neil Johnson, an Assistant Vice-President and Manager of the Special Investigations Unit at Liberty Mutual Group, to testify about the loss to your clients' workers compensation insurance carriers occasioned by your clients' conduct. Mr. Johnson will explain that all employers in Massachusetts must insure their employees against work-related injuries, and that for those employers who cannot obtain insurance on the open market, the state directs them to the "assigned-risk pool." He will explain that in either event, insurance premiums are based on the size of the insured's payroll and the risk profile of the work performed. He will add that each year, an employer must re-apply for insurance and, among other things, estimate the size of its payroll. At the end of the policy period, the employer is subject to an audit in which it must produce evidence detailing the size and nature of its business, including the size of its payroll.

Mr. Johnson also will identify and explain the significance of the forms associated with workers compensation insurance policies, including the policy application, the audit report, the premium adjustment notice, and notice of assignment. He will explain the terminology associated with the workers compensation system, and the methods by which workers compensation insurers are defrauded by hiding payroll, including by paying employees off-the-books, changing company names to avoid audits, and by using straw owners.

Mr. Johnson will describe his analysis of the records in this case, including your clients' payroll and banking records, as well as the records of their various insurance carriers, particularly their audit reports. Based on these records, as well as on the payroll analysis performed by Agent Giudoboni, Mr. Johnson will estimate the loss to the insurance carriers caused by your clients' misrepresentations about the size of their payroll for each policy period.

We anticipate that prior to trial we will be able to produce to you draft charts that set forth Agent Guidoboni's and Mr. Johnson's loss calculations. Their final calculations may be subject to revision based on the testimony at trial, and we anticipate that both witnesses will be present in the courtroom during the trial. We will make available to you their final loss figures prior to their taking the witness stand.

Finally, we intend to call James Donahue, an IRS Special Agent and Computer Investigative Specialist, to testify about his analysis of the "meta-data" on certain of the electronic media recovered in the search of your clients' office. He will explain generally that meta-data is information stored on a computer disk or drive that may not be readily apparent to the user. The most common example of meta-data are deleted files that, although no longer viewable by the casual user, may be recovered by virtue of the fact they continue to exist in an unreadable form. Special Agent Donahue will explain the process by which meta-data may be recovered.

December 18, 2007
Page 3

      Special Agent Donahue will testify that he was asked to analyze the meta-data on certain floppy disks that contained payroll records of the companies in whose name your clients operated their business. Twenty of the floppy disks were recovered in the search in Aimee King's office, and the other set of one hundred disks came from other parts of the Daily A. King office. Special Agent Donahue will testify that in particular he was asked to determine the user names of the individuals who either authored or "last modified" the payroll records. He will testify that based on his meta-data analysis, he concluded that Aimee King authored and last modified numerous payroll records on the disks.

                             Very truly yours,

                             MICHAEL J. SULLIVAN
                             United States Attorney

                          By:

                             JONATHAN F. MITCHELL
                             Assistant U.S. Attorney

Enclosures

# NEIL I. JOHNSON, CFE

## LIBERTY MUTUAL INSURANCE GROUP

## PREMIUM FRAUD SPECIAL INVESTIGATION UNIT

**1994 to Present-Assistant Vice President/Manager**-Home Office-Responsible for establishing and managing Liberty Mutual's first premium fraud special investigations operation. Created protocols within Liberty's internal operations for the detection of premium fraud for all lines of insurance. Includes managing civil litigation and assisting on both federal and state criminal prosecutions. Known as one of the premier operations in the industry. Often called upon by Federal and State Law Enforcement Agencies to provide technical expertise as well as various professional associations to serve on committees. Designated as an expert in the areas in forensic accounting, premium fraud, workers' compensation and workers' compensation premium determination.

## FINANCIAL FIELD AUDITING

**1990-1994 Director of Field Operations**-Home Office-Established and supervised the implementation of operating procedures for the Company's 9 Division Financial Field Auditing Units and 250 field auditors. Responsible for interdepartmental coordination and cooperation to ensure quality service to policyholders. Conceptual development and documentation of new system requirements for Data Processing. Interpreted and disseminated legislative rulings that affect auditing procedures. Staff development, reinforce training, and made promotional recommendations to the Department Manager. Represented the department at meetings. Developed and administered various Corporate Internal Auditing Programs.

**1988-1990 Director of Loss Auditing-** Home Office-Responsible for establishing and supervising the implementation of operating procedures for the loss auditing department. Provide a smooth transition into the consolidation process.

**1987-1988 Director of Training** - Home Office -Developed, organized, and administered auditing training and development programs from entry to the middle management level. Interpreted and disseminated rulings that affected auditing procedures. Developed and instituted the use of a two volume premium auditing reference manual by the field staff. Represented the department at meetings. Administered an automated automobile leasing billing system for the Company's 9 Division Auditing units. Developed, organized, and administered training seminars on how to successfully screen, interview, and hire entry level auditing and computer system personnel.

**1984-1987 Audit Supervisor/Manager of Field Operations** - New England Division - Responsible for the direct supervision of 10 Premium Auditors in an assigned territorial split. Accompanied auditors on field calls to observe performance and offer instructional assistance. Prepared job evaluations and salary recommendations. Coordinated the Department's divisional activities with those of other company operating units. Assisted in the training and supervision of the clerical personnel in the unit.

**Division/Home Office Financial Field Services Recruiter** -Responsible for conducting interviews and making hiring recommendations to 8 different department managers. In some cases, responsible for making the hiring decision. The recruiting responsibility was in addition to my regular management duties.

**1977-1984 Premium Auditor** - New England Division Performed functional audits on policyholders' financial records for premium determination purposes. Acquired a detailed knowledge of insurance coverage, classification procedures, and special rules. Worked closely with controllers, independent CPA's and managers of client companies. Progressed to Supervising Auditor in May 1980; charged with disseminating work, developing premium auditors, and handling larger, more complex accounts. Made initial service calls on large new Business and National risks. Completed comprehensive narrative reports and worked directly with other departments to resolve audit, service, or coverage problems. Accompanied salespeople on large risk solicitations.

## PROFESSIONAL DESIGNATIONS & AWARDS
**Certified Fraud Examiner**
**Diplomate with American Board of Forensic Accountants**
**Recipient of Massachusetts Insurance Fraud Award of Distinction**
**Recipient of New Jersey Office of the Insurance Fraud Prosecutor Commendation**

## PROFESSIONAL ASSOCIATIONS
**Mass Fraud Bureau-Board of Governors**
**Association of Certified Fraud Examiners**
**American College of Forensic Examiners**
**International Association of Special Investigation Units**
**National Coalition Against Insurance Fraud**
**National Society of Accountants**
**National Society of Insurance Premium Auditors**
**NCCI Task Force on Premium Fraud**
**New York- Commercial Automobile Task Force**
**PAAS Task Force on Premium Fraud & Commercial Automobile /General Liability Premium Fraud subcommittees for the states of Alabama, Florida, New Jersey, New York and South Carolina**

## EDUCATION

**1973-1977-University of Maine-** BS degree in accounting.

## CV of Special Agent-Computer Investigative Specialist James Donahue

Name:                   James P. Donahue
Position:               Special Agent, IRS – Criminal Investigation, Boston
Specialized Position:   Computer Investigative Specialist

### Educational Background:

1983: Graduate of Boston College, Chestnut Hill, MA. Bachelor's Degree, Political Science.

1985-1987: Earned 24 credits in Accounting and Business related courses at Bridgewater State College, Bridgewater, MA (in order to become special agent with IRS).

1995: Cum Laude graduate of Southern New England School of Law, Dartmouth, MA. Became member of Massachusetts Bar in June, 1996.

### IRS Training:

Basic special agent training, which includes Criminal Investigator Training (CIT), 1988, Tax for Criminal Investigation, 1988, and Special Agent Investigative Techniques (SAIT), 1989. All at Federal Law Enforcement Training Center, Glynco, GA.

### Specialized Computer Training:

1998: Basic Seized Computer and Evidence Recovery Specialist (BSCERS), Federal Law Enforcement Training Center, Glynco, GA. (four week course)

1999: Computer Evidence Analysis Training (CEAT), University of North Texas, Denton, TX. (four week course)

2000: Advanced Computer Evidence Recovery Training (ACERT), US Immigration and Customs Enforcement Cybersmuggling Center, Fairfax, VA. (two week course)

2000: Basic Encase Training, Guidance Software, Fairfax, VA. (one week course)

2003: Advanced Computer Evidence Recovery Training (ACERT), US Immigration and Customs Enforcement Cybersmuggling Center, Fairfax, VA. (two week course)

2007: Advanced Computer Evidence Recovery Training (ACERT), US Immigration and Customs Enforcement Cybersmuggling Center, Fairfax, VA. (two week course)

Since becoming a CIS I have periodically attended numerous in-service training modules to maintain proficiency.

To: Jonathan Mitchell and Sarah Walters

From: Joseph P. Guidoboni, Revenue Agent, Small Business/Self-Employed Division

Date: December 6, 2007

Subject: Background and Education

## BACKGROUND:

I have been an internal revenue agent with the Internal Revenue Service for nineteen years.

From approximately June 1988 to January 1992 I have conducted examinations of both personal, corporate, and partnership federal tax returns.

From January 1992 to November 1995 I was a member of the review staff. In that capacity, I reviewed the work of other revenue agents for compliance with the auditing standards set forth in The Internal Revenue Manual. In addition, I was assigned various coordinator duties, including the duty to serve as the statutory notice of deficiency coordinator.

Finally, from November 1995 to the present I have been assigned to the Special Enforcement Program. Duties include reviewing and analyzing records obtained during the course of an investigation; reconciling the reported income to the books and records obtained during the investigation; participation in interviews with the taxpayer, preparer, and third party witnesses and participation in meetings with the Assistant United States Attorney during the investigation; preparing calculations of tax and providing technical expertise to the Special Agent and/or Assistant United States Attorney during preparation for trial; providing testimony as a summary witness regarding the actual determination of income based upon evidence admitted during trial.

## EDUCATION:

I received a Bachelor of Science degree in Business Administration with an accounting major from the University of Maine-Orono.

I completed the five phases of revenue agent training, which included instruction in individual, corporate and partnership tax law.

Annually attended the Internal Revenue Service's continuing professional education program (CPE).

My address is located at Internal Revenue Service, JFK Building, Stop #41225, Group #1219, Boston, MA 02203. Any questions feel free to call me at (617) 316-2116.

Sincerely,

*Joseph P. Guidoboni*

Joseph Paul Guidoboni

```
                           *********************
                           ***   TX REPORT   ***
                           *********************

        TRANSMISSION OK

        TX/RX NO                0105
        RECIPIENT ADDRESS       816173426899
        DESTINATION ID
        ST. TIME                12/18 20:17
        TIME USE                00'51
        PAGES SENT              8
        RESULT                  OK
```

Department of Justice
United States Attorney's Office
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210
Main Reception: (617) 748-3100

Michael J. Sullivan
United States Attorney
District of Massachusetts



# Facsimile Transmission Cover Page

**TO:**    Steve Delinsky and Jack Zalkind

---

## SENSITIVE U.S. ATTORNEY FACSIMILE COMMUNICATION

**The information contained in this facsimile message, and any and all accompanying documents constitutes sensitive information. This information is the property of the U.S. Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return to us.**

---

**FROM:**    Jon Mitchell

Sender's Phone No.: (617) 748-3274

_Sender's Receiving Fax No._: (617) 342-6899

Recipient's Fax No.: (617)

Date: December 18, 2007    Pages: 7

Re: Summary of Expert Testimony

---

# INSTRUCTIONS

IMMEDIATELY NOTIFY SENDER OF ANY DIFFICULTIES IN TRANSMISSION.

["X" for a receipt notification]    PLEASE NOTIFY SENDER OF RECEIPT BY TELEPHONE.

Department of Justice
United States Attorney's Office
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210
Main Reception: (617) 748-3100



Michael J. Sullivan
United States Attorney
District of Massachusetts



# Facsimile Transmission Cover Page

**TO:**    Jack I. Zalkind, Esq.

---

## SENSITIVE U.S. ATTORNEY FACSIMILE COMMUNICATION

**The information contained in this facsimile message, and any and all accompanying documents constitutes sensitive information. This information is the property of the U.S. Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return to us.**

**FROM:**    Sarah E. Walters

<u>Sender's Phone No.</u>:    (617) 748-3130



*<u>Sender's Receiving Fax No.</u>*:  (617) 748-3960

<u>Recipient's Fax No.</u>: (617) 342-6899

Date: <u>January 11, 2008</u>        Pages: <u>10</u>

Re: <u>U.S. v. Daniel W. McElroy and Aimee J. King McElroy</u>

---

# INSTRUCTIONS

IMMEDIATELY NOTIFY SENDER OF ANY DIFFICULTIES IN TRANSMISSION.

PLEASE NOTIFY SENDER OF RECEIPT BY TELEPHONE.

**EXHIBIT 3**



302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    02/09/2006

        CHARLES J. WALLACE, Date of Birth: July 17, 1950,
Social Security Account Number: 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 was interviewed at
the offices of his attorney, GREG NAZARIAN, Brockton,
Massachusetts (MA). Participating in the interview was INTERNAL
REVENUE SERVICE (IRS) Special Agent THOMAS DEMEO. WALLACE who
was already aware of the identities of the interviewing agents,
thereafter provided the following information:

        WALLACE never worked for COMMONWEALTH TEMPORARY
SERVICES (COMMONWEALTH TEMPS). WALLACE needed a loan/some
money, so he went to MICHAEL POWERS and JOHN MAHAN to see if
they could help him. They said they would loan him the money,
but that they would record it as a consulting fee. COMMONWEALTH
TEMPS has since shut down.

        ADVANCED TEMPORARY SERVICES (ATS) was started in
November 2003 in WALLACE's girlfriend's name, MARGARET MAYER.
The accounts of COMMONWEALTH TEMPS went to ATS. POWERS and
MAHAN contributed money to ATS through their wives' companies,
OVERLOOK INVESTMENTS (MAHAN) and FIELDSTONE INVESTMENTS
(POWERS). MAHAN and POWERS each put in $75,000. WALLACE speaks
with POWERS on a weekly basis. He does not speak with MAHAN
very often.

        ATS pays MAHAN and POWERS consultant fees. They are
not employees. Their payments are listed as "Management Fees"
on ATS' taxes. As of 2006, MAHAN receives $3,900 per week and
POWERS receives $3,900 plus an extra $750 per week for having
paid off an EASTERN BANK loan. They each received $600 less
during 2005. MAHAN and POWERS receive an occasional bonus
check.

        MARGARET is responsible for processing approximately 60
percent of the payroll checks. She draws $600 on her W-2s and
increases as the year goes on. MANUEL DIAGUAIR processes the
other payroll checks.

        MAHAN has a drinking and gambling problem. POWERS is
unfamiliar with RON MAHAN. KEVIN HAYES was a salesman for
COMMONWEALTH TEMPS.

---

Investigation on    2/2/06    at  Brockton, MA

File #  318A-BS-94867                                Date dictated   2/9/06

by    SA Nancy L. McCormick/nlm

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

                                                        TOTAL P.04

**EXHIBIT 4**



FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription     06/30/2005

ROGER MURPHY, Revenue Enforcement Supervisor, Division
of Unemployment Assistance (DUA), 19 Staniford Street, Boston,
Massachusetts (MA), telephone 617-626-5751 and GARY A. KENDALL,
Investigator, Division of Occupational Safety, 399 Washington
Street, 5th Floor, Boston, MA, telephone 617-727-3696, were
interviewed at the offices of the Insurance Fraud Bureau of
Massachusetts (IFB).  Also participating in the interview were
Special Agent (SA) THOMAS DEMEO, Internal Revenue Service (IRS)
and ANTHONY DIPAOLO, IFB.  MURPHY and KENDALL were advised of
the identities of the interviewing parties and the nature of the
inquiry.  They thereafter provided the following information:

COMMONWEALTH TEMPORARY SERVICE (COMMONWEALTH) was
operated by MIKE POWERS and JOHN MAHAN.  COMMONWEALTH
established a debt with the DUA.  Its license was up for renewal
on July 5, 2004, but COMMONWEALTH could not renew until its debt
was paid.  The matter went to hearing.  There was decision in
July/August to subside.  COMMONWEALTH owes approximately $95,000
from 1998/1999.

ADVANCED TEMPORARY SERVICES (ATS), 418 Belmont Street,
Brockton took over after COMMONWEALTH subsided.  MARGARET MAYER
is the alleged President of ATS.  Mail is delivered to MAYER/ATS
care of CHARLIE WALLACE at his Harvard Street address.

ATS started up on May 27, 2004 and allegedly had 6
clients.  ATS is currently doing $2.5 million per quarter of
business.

HAROLD KNIGHT, doing business as (dba) LABOR NOW, is an
insurance agent.  KENDALL described it as unusual for an
insurance agent to own a temporary agency.

GEORGE WALLACE was affiliated with PRECISSION TEMPORARY
SERVICE.

KENDALL has had discussions with MAHAN, POWERS and
Attorney DEFRANCHESCI regarding 1099 employees.  KENDALL visited
COMMONWEALTH and met with MAHAN, POWERS and MANNY DEAGUIAR.
They claimed to have 5-6 guys out in the field with paperwork in
their trunks.  KENDALL was never shown any files.  Everything
appeared to be on the computer.

Investigation on     2/7/05          at   Boston, MA

File #  318A-BS-94867                         Date dictated   6/30/05

by   SA Nancy L. McCormick/nlm

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

302a (Rev. 10-6-95)

318A-BS-94867

itinuation of FD-302 of _____Roger Murphy/Gary Kendall_____ , On 2/7/05 , Page 2

  Attorney DEFRANCHESCI described COMMONWEALTH's sales staff as brokers and its employees as employees of sales, each with their own company/individual temporary agency. KENDALL told DEFRANCHESCI that if the sales guys are independent, then each of them needed to be licensed.

  KENDALL has been to MAHAN's home at 96 Overlook Road. He entered through the garage. He observed boxes stored near the furnace. MIKE POWERS is operating a real estate company now or at least that is how he answers his telephone.

  KENDALL advised that within 2-3 weeks of the government search at DAILY A. KING LABOR (DAK), KENDALL visited DAK and it appeared as though business had been reestablished. By December 2003, it looked as though nothing was being done anymore. The offices appeared empty. The last paperwork KENDALL has from DAK is dated July 2003.

  KENDALL always dealt with AIMEE KING at DAK and described her husband as "a slug." In July 2003, HEATHER ZINNA established a temporary employment agency known as PEOPLE SOURCE CONSULTING LLC.

  CARNEY and MURPHY provided copies of two items: 1) a document entitled "Commonwealth Temporary Services, 96 Overlook Road, Stoughton, MA 02072... For 2002" listing Vendors/Subcontractors, Points of Contact and an attached client list for 2002 and 2) a 2 page document entitled "Commonwealth Temporary Services, Inc... Proposal for the Provision of Temporary Labor to Bourne Solid Waste."

# Commonwealth Temporary Services
## 96 Overlook Road
## Stoughton, MA 02072
### *"The Company That Works For You!"*

For 2002

| Vendor / Subcontractor | Spec Rate | Mark Up | Total paid 2002 |
|---|---|---|---|
| Gramajo Bros | $2,733,754 | $373,256 | $3,107,010 |
| Jose Soto | 945,463 | 128,544 | 1,074,007 |
| Selavy Long | 601,512 | 86,771 | 688,283 |
| Servicios Ortega | 980,086 | 143,629 | 1,123,715 |
| Giovanni Sanchez | 45,325 | 3,562 | 48,887 |
| Sam Prum | 147,569 | 15,373 | 162,942 |

Points of Contact:

Gramajo Bros.          Jose Gramajo          401-529-4740          *Supply Workers*
Jose Soto                                    508-942-6744
Selavy Long                                  508-676-7857
Servicios Ortega       Alvaro Ortega         401-447-9629
Giovanni Sanchez                             meets with Manny in person.
Sam Prum                                     401-641-5668

NB:

Sam Prum serviced an account entirely in Rhode Island.

The following individuals were paid directly by CTS for contracted services and amounts as described below:

| | | |
|---|---|---|
| Germaine Dugre | Sales commissions | 33200 |
| Ronald Mahan | Sales Commissions | 11548 |
| Manny Deaguiar | expense reimbusments | 4100 |
| Gregory Vassapollo | courier services | 18496 |
| Faisell Mirza | Cleaning | 16783 |
| Anthony Ruggerio | Quality Auditor | 37280 |

Manny has already met the DBT max. contribution. While we feel the others were independent contractors, we do recognize that we engaged them directly, and if it will facilitate favorable outcome, we will pay the DBT premium on these folks.

CC:

*P J Service Company*
*Darly A King*

Phone: 781-341-3533
Customer: 781 341 4057

*ALL of 2002*

| Jan – Dec 02 | Contact | Phone |
|---|---|---|
| Advanced 3rd party dist | Tim Garlick | 401-767-1773 |
| Agar Supply | Mike Tedeshi | 617-860-5206 |
| AUBURN MRF / FCR | Steve James | 508-721-2700 |
| Barrett | Dave Grose | 508-553-8800 |
| ✓ Brady | Jack Brady | 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 |
| BusyBee | Kerry Barton | 508-447-9526 |
| C&S RECYCLING | Orlando Bratti | 508-539-2720 |
| Cape Cod Golf Properties | Chelby | 508-428-6800 |
| Casual Male Corp. | Jack Noone | 781-828-9300 |
| chiswicks | Tom Bussierre | 978-443-1700 |
| Christmas Tree Shop Dist. Ctr | Andrea McKenna | 508-923-0333 |
| DVL Landscape | Derek Van Lent | 401-486-2081 |
| Esselte | Linda Rose | 761-821-2273 |
| F.W.WEBB | Phil Lafuci | 508-584-6418 |
| Fetoo International | Kitty Richards | 800-225-0485 |
| ✓ Garment Express | Herb Chace | 508-984-7250 |
| HarjuCranberries | Kenneth Harju | 508-886-3814 |
| ✓ Industrial Solutions | Delfine Freites | 781-341-8100 |
| International Cable | Michelle | 781-297-3000 |
| *done* — INternational Metal | Mike Sheroff | 781-297-3000 |
| Interstate Coffee | Steve Anderson | 508-238-8393 |
| kala landscaping | Mat Kala | 508-420-3977 |
| KTI RECYCLING | Mike Crowell | 617-242-7746 |
| ✓ L E MASON | Moved out of State |  |
| Mats | Gary Sarkisian | 781-344-1536 |
| Maxwell Shoe co | Peter Vacchi | 617-333-4163 |
| ✓ Miller Personnel | Tony Miller | 508-674-1502 |
| Ned Phillips, LLC | Ned Phillips Jr. | 401-447-3523 |
| New England Recycling | Paul Correia | 508-823-8838 |
| NOrtheast Electrical | Mark Dimillio | 781-401-9575 |
| Northeast Envelope | Paul Reissfelder | 781-843-4900 |
| NUTRAMAX | Lisa Cherills | 508-584-8100 |
| P & O - Cold Logistics | Joe Leavitt | 580-821-1710 |
| Pantresse Inc. | Kevin Lima | 781-828-7199 |
| Parker Warehouse | Glen Pierce | 508-584-7200 |
| PEMBROKE CONCRETE PROD. | Don Moberg | 800-698-6463 |
| Pride inc | Doug Latham | 508-823-7135 |
| Purchase Pro America | Joe Lombardi | 617-686-6700 |
| Quebecor | Jack Eddington | 508-586-7737 |
| Resource Recovery | Bill Robinson | 508-833-6200 |
| Rochester Env Park | John | 508-291-3400 |
| ✓ Shorey Manufacturing inc | Dennis | 508-760-1070 |
| ✓ Silver City Aluminum | Ron Xavier | 508-824-8631 |
| star bindery | Lee Harris | 781-341-4445 |
| ✓ Stergis aluminum products | Kathy Courtney | 508-668-9998 |
| talbots | Sue Handy | 781-741-4685 |
| Thorndike Construction Corp. | Bill Forsyth | 617-471-3054 |
| Town of Bourne | Don Barrett | 508-759-0851 |
| Trudelle Construction Co, Inc | Don Trudelle | 781-826-9586 |

## Commonwealth Temporary Services
### "The Company That Works for You."

### Proposal for the Provision of Temporary Labor to Bourne Solid Waste,

#### A. Scope of Services

**Temporary Laborers** – CTS ("the Company") will provide Bourne Solid Waste ("the Client") with temporary laborers in quantities ordered by the Client. All labor provided is "temporary and on call", and this proposal is expressly not an employee leasing agreement. Absent any quality issues, the minimum charge will be 4 hours at the applicable rate for each worker.

**Taxes** – The company will pay all applicable local, state, and federal payroll taxes on all labor provided. The company will endeavor to fill all orders with statutory employees. The company may use subcontractors.

**Insurance** – The company shall maintain workers compensation on all employees and any subcontractors who cannot provide proof of insurance.

#### B. Rates & Billing – Fees will be as described below.

##### GENERAL LABOR

$12.00 Hour First Shift

Overtime billed as applicable (any hours over 40 in the week) at 1.5 times rate. Other positions quoted as needed.

**Raises** – If the Client wishes to grant a merit raise to an employee of the company, The rate shall be increased by the amount of the raise factored by 1.27 ( Raise x 1.27 ). All raises / bonuses / merit pay increases must be sent to the Company in writing.

**Billing** – An invoice with all supporting documentation shall be delivered to the clients Bourne, MA. offices. Target time for invoice will be not later than 3:00pm on the Wednesday of any week. The invoice period shall be the calendar week, Sunday through Saturday.

**Payment Terms** – NET SEVEN (7) DAYS FROM INVOICING.

**Disputed billing** – In the event of a disputed charge, the client will withhold the amount in dispute from payment to the company. All charges not otherwise disputed will be paid normally.

##### Miscellaneous / Administrative

**Amendments** – All amendments to this agreement must be in writing.

**Massachusetts Law** – It is stipulated by all parties that Massachusetts law applies to this agreement. Client agrees to pay all reasonable costs, including attorneys' fees, involved in the collection of amounts owed to the company by the client for services performed pursuant to this agreement.

**Notices** – All notices shall be sent to the following addresses, as applicable:

Client:
Bourne Solid Waste
201 Macarthur Blvd
Bourne, MA.

Company:
Comm. Temporary Services,
15 Corbett Road
Stoughton, MA. 02072

15 Corbett Road
Phone (781) 341-3533

Stoughton, Massachusetts 02072
Fax (781) 341-4987

# Commonwealth Temporary Services, Inc.
### "The Company That Works for You."

## Other Conditions:

1. The client will pay a fee of $1,500 for any company employee it hires before 90 days. Fee will be waived after employee has 90 days on assignment.

2. Unless requested by the client, invoices will be ~~faxed, not~~ mailed. *BJG*

3. All orders will be filled on a "good faith, best effort" basis by the company. The company will in no way be responsible for shortages, "no-shows", etc.

4. ~~Any charges for pre-employment screening will be billed to customer at actual cost~~ *BJG*

Nothing Follows:

For Commonwealth Temporary Services, Inc.

For Bourne Solid Waste

*Michael F. Powers*

**Michael F. Powers, Jr.**
**Vice President**

*Brent J. Goins*

**Brent Goins**
**G.M.**

2 of 2

15 Corbett Road
Phone (781) 341-3533

Stoughton, Massachusetts 02072
Fax (781) 341-4987

TOTAL P.02

TOTAL P.03

TOTAL P.07