UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 05-10019-RGS |
| v. | ) | |
| DANIEL W. MCELROY, and<br>AIMEE J. KING MCELROY, | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION
TO THE DEFENDANTS' MOTION TO CONTINUE**

The government hereby opposes the Defendants' Motion to Continue on the grounds that the defendants cannot fairly claim any prejudice from the timing of certain government disclosures, and even if there were any conceivable prejudice, it is greatly outweighed by the need to press forward with a trial that is long overdue.

The defendants cry foul in that they claim to have learned only last week that the government intended to call three summary witnesses in its case-in-chief who may arguably be characterized as experts. Although the witnesses would offer no opinion testimony, and the "expertise" to which they will testify is hardly beyond the ken of a lay person, the government decided in an abundance of caution to make expert disclosures. Although the government accepts at face value defense counsels' representation that they did not receive the fax on December 18, the date it was transmitted, the defendants can hardly claim prejudice. The defendants have been aware for over a year that the government would call the two summary/expert witnesses, an IRS revenue agent and a representative of the insurance industry, whose purpose is simply to add up the losses resulting from the defendants' under-the-table

payroll scheme. As the Court is aware, such testimony is routine in cases like this. Indeed, Assistant U.S. Attorney Paul Levenson, the prosecutor originally assigned to this case, notes that the government presented its tax loss figures to the defendants over three years ago in connection with plea negotiations. The defendants even hired their own expert who met with the IRS agent in this case to review his calculations. Thus not only have the defendants been aware of the government's tax loss analysis for over a year, they hired their own expert long ago.

Several months ago, in discussions with defense counsel, AUSA Levenson reaffirmed the government's intention to call its own "experts" to testify about tax and insurance loss. In or about December 10, 2007, the AUSAs now assigned to the case discussed with defense counsel a long list of open items, including the government's intention to call three "expert" witnesses to total the tax and insurance losses in this case, as well as to testify about the properties of certain cash payroll spreadsheets found on floppy disks in the defendants' offices. At that time, the undersigned AUSAs also asked whether it would be acceptable if the government disclosed its summary of their testimony the following week, that is, the week of December 17. Defense counsel said that was fine, and said nothing about the forty-five business day deadline set by Magistrate Judge Collings that defense counsel now invoke. Accordingly, on December 18, 2007, undersigned counsel faxed the disclosure letter that is attached to the defendant's motion as Exhibit 2, which includes the record of the fax transmission.

There are no surprises in the anticipated testimony of the two "loss" witnesses. The figures that the first witness, IRS revenue agent Joseph Guidoboni, will testify to are not materially different from those the government shared with the defendants last year. Nor has the methodology changed. The second witness, Liberty Mutual Insurance vice-president Neil

Johnson, will essentially plug Guidoboni's figures into insurance premium formulas used in the industry and report the results. Guidoboni and Johnson alike will testify that the losses to the IRS and the defendants' insurance carriers, respectively, are in the millions of dollars. In light of defense counsels' repeated representations to the government that their defense will be about whether the defendants were aware that false information was being conveyed by their agent to the IRS and the insurance carriers, it is difficult to discern how the defendants would be prejudiced by not having enough time to present the jury with lower loss figures. Put another way, evidence of lower loss figures would not advance their lack of knowledge defense.[1] For these reasons, they cannot claim to be disadvantaged by not having received the government's summary until last week.

As for the third "expert," IRS Special Agent James Donahue, the defendants can hardly claim he is an expert in the usual sense. In essence, Donahue will testify that he reviewed the properties of certain cash payroll files and determined that many of the files were authored on a computer that contained software registered to "Aimee J. King."[2] Donahue's testimony would be relevant to show that King was aware of and indeed managed her company's cash payroll. His testimony is based in essence on his search for authorship information available in Microsoft Excel's "Properties" feature, an exercise that may be completed by a lay person. Instead of conducting a manual search of the more than five hundred disks recovered in the search, SA Donahue loaded the disks onto a server and utilized a commercially available search software to

---

[1] If their loss figures are lower than the government's, they will have ample opportunity to present them at sentencing, where it would matter more.

[2] Because the none of the files appear to be authored by defendant Daniel McElroy, Donahue's testimony relates to defendant Aimee J. King McElroy.

complete the task efficiently. The use of this software did not materially alter the result, but simply enabled him to conduct an automated, as opposed to manual, search of a large set of files. In short, Donahue's analysis is hardly complex enough to be characterized as "computer forensics."[3]

In response to the defendants' concern about adequate notice, the government took the extraordinary step of allowing defense counsel and his computer specialist to interview SA Donahue about his anticipated testimony. Donahue answered all of their questions. If indeed defense counsel wishes, as he claims, to conduct an actual forensic examination of the disks reviewed by SA Donahue, counsel can do so in time for trial. SA Donahue is not scheduled to testify until the week of January 28, the second week of trial. This will afford the defendants ample time to prepare for his cross-examination and, if necessary, the presentation of testimony to rebut Donahue.[4]

The final basis with which the defendants seek a continuance relates to two interview memoranda government counsel turned over recently (immediately upon learning about them). The defendants claim that the memoranda contain "powerful" exculpatory evidence about how their clients were "set up" by government cooperators. See Defendants' Motion to Continue, ¶

---

[3] The limitations of Donahue's value to the government's case should be noted. Donahue can testify that the files at issue were authored on a computer that contained software registered to Aimee J. King. He would be in no position to identify the person who actually sat at the keyboard and authored the files, a point that the defendants obviously can make on cross-examination and in closing.

[4] To remove any doubt about any claim of undue prejudice resulting from this proposal, the government would be willing to refrain from mentioning Donahue's testimony in its opening statement.

5. The defendants refrain from elaborating on just how the information in the memoranda is relevant, and state that they would explain their theory to the Court in camera.

The defendants' argument should be put into perspective. They are not talking about substantive Brady material; that is, nothing in the interview memoranda would directly negate evidence that the defendants were aware that they caused false information to be conveyed to the IRS and their insurance carriers. The defendants instead appear to be contending that the information in the memoranda is Giglio evidence as to two of the government cooperators, Charles Wallace and Michael Powers. The government informed defense counsel long ago that it will not call Powers as a witness. That leaves Wallace, on whom the defendants have ample ammunition for cross-examination. Wallace entered into a plea agreement in which he is eligible for a departure pursuant to Section 5K1.1 based on his testimony at the trial of this case. There can be no doubt that the defense will attack Wallace based on his desire for a reduction in sentence. In addition, they presumably will attempt to make hay over Wallace's prior conviction for tax fraud in the 1980's. Whatever the defendant's far fetched theory about Wallace's "setting up" the defendants is, even if conceivably relevant to Wallace's credibility, it would not materially add to the substantial cross-examination of Wallace for which the defense has been primed for some time. For this reason, the defendants can hardly claim that the government's recent disclosure of interviews that were tangential to this case could somehow warrant a continuance.[5]

---

[5] In paragraph 7 of their motion, defense counsel aver that personal issues may limit the time they can devote to work. The government is unaware of how exactly these personal issues limit their ability to work, and therefore is not in a position to respond to this point. The government does note, however, that this trial was continued from last October to accommodate defense counsels' personal issues.

Finally, even if the defendants can claim some inconvenience from the timing of the government's disclosures, it cannot justify yet another continuance in this matter. The case was indicted in 2005, and already has been continued twice, most recently in October. It has long been ripe for disposition, and should not be delayed again.

For all the foregoing reasons, the defendants Motion to Continue should be denied.

                                                Respectfully submitted,

                                                MICHAEL J. SULLIVAN
                                                United States Attorney

By:   /s/Jonathan F. Mitchell
        JONATHAN F. MITCHELL
        SARAH E. WALTERS
        Assistant U.S. Attorneys
        U.S. Attorney's Office
        U.S. Courthouse, Suite 9200
        1 Courthouse Way
        Boston, MA 02210

## CERTIFICATE OF SERVICE

     I hereby certify that on January 15, 2008, I served a copy of the Government's Opposition to the Defendant's Motion to Continue by electronic filing on counsel for the defendants.

                                              /s/ Jonathan F. Mitchell
                                              Jonathan F. Mitchell